In the Matter of Proving the Last Will and Testament of MARY J. PIERSON, Deceased, as a Will of Real and Personal Property.

THE PEOPLE OF THE STATE OF NEW YORK and Another, Appellants; MARIE SHOTWELL, Respondent.

First Department, December 22, 1922.

Wills — probate — written document which was indefinite, incomplete and contained unexplained erasures denied probate.

Probate should be denied a written document offered as a last will and testament, which is written on note paper in lead pencil and shows a number of unexplained erasures and where, upon its face and upon the evidence introduced, it is manifestly incomplete and unfinished and bears every indication of being a mere memorandum made preparatory to the writing of a will.

43

APPEAL by the People of the State of New York and another from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 4th day of May, 1922, dismissing the objections filed by the Attorney-General of the State of New York and admitting to probate the instrument in writing bearing date the 27th day of November, 1921, propounded as the last will and testament of Mary J. Pierson, deceased.

*Charles D. Newton, Attorney-General* [*Robert P. Beyer, Deputy Attorney-General,* of counsel; *Cortland A. Johnson, Deputy Attorney-General,* with him on the brief], for the appellants.

*Cornelius Huth* of counsel [*Isidor M. Katz* with him on the brief], for the respondent.

*Max Altmayer,* special guardian on behalf of the unknown heirs at law and next of kin of the decedent.

GREENBAUM, J.:

The instrument offered for probate reads as follows:

" I appoint Marie Shotwell as my executrix in this my last will & testament.

| | | |
|---|---|---|
| Dorothy Little.......................... | 1 | |
| Frances Peeles.......................... | 2 | 1 |
| Charles Truitt.......................... | 3 | 1 |
| Wm N. Guthrie.......................... | 4 | |
| Clara Guthrie.......................... | 5 | |
| Jessica Williams.......................... | 6 | $200 |
| Fanny Maher.......................... | 7 | $500 |
| Dr. Tompkins.......................... | 8 | |
| Elizabeth Konkly.......................... | 9 | |
| Margie Leavitt.......................... | 10 | |

" Miss Peebles Delamontto distribute you and Fany the things as best you can.

" Autograph books to Luther V. Little all personal belongings distributed by Miss Fanny Maher.

" Investments-shares stocks ' etc.' all monies to my dear child & friend Marie Shotwell.          " Nov. 27, 1921

" Mary J. Pierson
" M. Pierson
" Pierson
" Pierson
" Fanny Maher 323 East 21 St. New York.
" Marie Shotwell Seymour Hotel, 50 W. 45 St. N. Y. C.
" Jessica Williams 288 East 10th."

The paper writing admitted to probate was written on note paper in lead pencil in a straggling manner. It shows a number of erasures. It has every indication of being a mere memorandum made preparatory to the writing of a will.

The decedent, Miss Pierson, had been a school teacher in the public schools of the city of New York for many years, commencing 1881. The testimony was that she had no living relatives. One Marie Shotwell, who was named as the sole executrix and who, if the will is sustained, becomes legatee of practically the entire estate, had been acquainted with the deceased for about ten years.

It appeared from the proofs that on and prior to Saturday, November 26, 1921, the decedent was critically ill suffering from cancer of the stomach.

Jessica Williams was the first witness called by the proponent Shotwell. She was one of the witnesses to the purported will and she waived her legacy of $200 thereunder. She testified that she had acted as nurse from time to time for a number of years; that the testatrix died at 44 Stuyvesant street, New York city, on November 30, 1921, and that she was about sixty years of age.

She testified that on Sunday, November 27, 1921, she placed her signature to the will and that Miss Shotwell and Mrs. Fanny Maher were present. She further said: " On Sunday I was called into the room and Miss Shotwell and Mrs. Maher were with Miss Pierson talking with her, and Miss Pierson asked Miss Shotwell for the paper and said, ' now read as far as we wrote yesterday, * * * Saturday.' " The same witness also testified that on Saturday, when she left Miss Pierson's room she heard her say: " ' Please shut the door.' I was in the next room taking care of the linen and I heard Miss Shotwell at the telephone. * * * I heard her say, ' shall I ask a lawyer to come up to talk to you,' and Miss Pierson responded, ' yes.' I could hear that. I could hear and heard from that telephone conversation, ' the first thing you have to do is to appoint an executor,' and I could hear Miss Pierson's voice raised, ' I am going to appoint you my executor, Marie.' Q. That was on Saturday. A. Saturday noon, yes. When Miss Shotwell came out she said ' Judge Huth is coming at half-past two to *see Miss Pierson about making a will.*' She said, ' please have her quiet until that time so she won't be excited at half-past two.' Judge Huth came and I went in to Miss Pierson and announced him and said, ' Judge Huth is here, do you want to see him,' and she said, ' yes, I do,' and she said, ' please leave the room and shut the door,' and I * * * left him there with her. * * * Miss Shotwell got to the house — Judge Huth left the house in a little while and Miss Shotwell had meant to meet him there."

First Department, December, 1922. [Vol. 203

Miss Shotwell called the following day, Sunday, at about noon, and according to the witness two other names were added to the paper, namely, Miss Peebles and a Miss Delamontto, which it was afterwards ascertained was incorrectly spelled and was intended to refer to a Miss Delemater. It also transpired that " Miss Peebles " was the " Frances Peeles," named in the paper.

This witness was also asked upon the trial as to the circumstances attending the execution of the document and she testified that Miss Pierson signed it four times. She further testified: " Q. After she had signed the will did she tell you that it was her last will and testament? A. Not in so many words, no. Q. Did she ever tell you that it was her last will and testament? A. No, except she acknowledged it when it was read to her, as such. Q. Was the whole will read to her together, both parts? A. No. Q. And she never told you that it was her last will and testament? A. Not in so many words. Q. What did you do after she signed the will? A. I said we must witness this signature. * * * Q. Did she ever ask you to sign it? A. No. Q. Did she ever in your presence ask Miss Shotwell to sign it? A. No. Q. Did she ever ask Mrs. Maher to sign it? A. I do not know. They talked by signs. Mrs. Maher is deaf."

Fanny Maher, the other witness, testified that she was a cleaning woman and that she had known Miss Pierson for about nineteen years. This witness also waived her legacy of $500 under the will. She also testified that she was present on Sunday noon, November 27, 1921, when the paper was signed; that the paper was placed upon a book and that then Miss Shotwell started to write things as Miss Pierson told her. Then after it was written Miss Pierson tried to sign. She had suffered a great deal. She was a little weak. The witness said: " Mrs. Williams and I held her while she signed her name, and she did one thing that she had a habit of, that aggravated me. She signed her name more than once. If she wanted to emphasize anything that she wanted to do she wrote it, ' clean the window, clean the window, clean the window,' or ' clean the silver,' and it made me angry, and she did that with the name. After it was signed Miss Shotwell showed it to her on the book. Mrs. Williams and Miss Shotwell went to the bureau in the corner, I was crying. I felt very bad because I knew she was dying. She waved with her two fingers, and waved me to the bureau and I said to her ' do you want me to sign your will,' and she nodded her head, and I went over and signed the will also."

The body of the paper was all in the handwriting of Miss Shotwell and the circumstances attendant upon its execution indicate most clearly that the paper which was finally signed by the testatrix

was an incomplete and indefinite document which did not express the intention of the testatrix; that it was merely intended as a sort of memorandum, so that although she had named ten or more persons in the paper as the objects of her bounty, she had either not told Miss Shotwell, what the legacies of those persons were to be or if she had told her, there was no provision made as to how much any of them was to receive.

Miss Williams and Miss Maher waived their legacies. It is quite evident that these waivers were made pursuant to some prearrangement or understanding whereby they would be nevertheless compensated.

The evidence also justifies the conclusion that the deceased did not state to those who acted as witnesses that the paper signed by her was her last will and testament and that the deceased did not regard the paper as her last will and testament. Indeed the witness Williams testified that on Sunday afternoon after the paper had been signed Miss Pierson called to her and said: " Where is that paper? I forgot something." That upon being told that Miss Shotwell had taken it with her she said: " I want it back, I forgot Mrs. Holm, I want to leave her something." The evidence also justified the conclusion that the deceased was under the influence of narcotics and was not in a condition mentally to grasp all that was being done in connection with the signing of the document. It is also manifest that the paper writing was improperly admitted to probate, since upon its face and upon the evidence it was incomplete, unfinished and contained unexplained erasures and hence that it did not fully express the intentions of the deceased.

The decree appealed from should be reversed and a decree entered denying probate of the paper writing offered as the last will and testament of the decedent, with costs of this appeal to all parties appearing herein payable out of the estate.

CLARKE, P. J., SMITH, PAGE and FINCH, JJ., concur.

Decree reversed and a decree directed as stated in opinion, with costs to all parties appearing herein payable out of the estate. Settle order on notice before January first.